ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| | | |
|---|---|---|
| **PARTIDO NUEVO PROGRESISTA**<br><br>Recurrido<br><br>v.<br><br>**SAMUEL PAGÁN CUADRADO**<br><br>Recurrente<br><br>**COMISIÓN ESTATAL DE ELECCIONES; aspirante JEAN PAUL CARRILLO CÁCERES**<br><br>Parte interesada | KLRA202400167 | **REVISIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **San Juan**<br><br>Caso Núm: **SJ2024CV02059**<br><br>Sobre: Descalificación de Aspirante bajo Art. 7.5 de Ley 58-2020 |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y el Juez Rodríguez Flores.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 18 de abril de 2024.

Mediante *Recurso de Revisión al Amparo del Código Electoral*, comparece ante nos, el señor Samuel Pagán Cuadrado (señor Pagán Cuadrado) y solicita que revoquemos la *Sentencia* emitida el 21 de marzo de 2024,[1] por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI). Mediante dicho dictamen, el foro primario declaró *Ha Lugar* la querella sobre descalificación presentada por el Partido Nuevo Progresista (PNP). En consecuencia, ordenó la revocación de la certificación a la aspiración del señor Pagán Cuadrado como candidato del PNP al cargo de Representante por el Distrito 35.

Por los fundamentos que expondremos a continuación, confirmamos el dictamen apelado.

---

[1] Notificada en igual fecha.

Número Identificador

SEN2024 _____

**I.**

Según surge del expediente, el 22 de noviembre de 2023, el PNP certificó que el señor Pagán Cuadrado cumplió con todos los requisitos establecidos en el *Reglamento para Radicación de Candidaturas y los Procesos de Primarias 2024* y el *Reglamento para Evaluación de Aspirantes a Cargos Públicos por Elección y Aspirantes a Posiciones en el Proceso de Reorganización* para aspirar a la candidatura de Representante por Distrito del Distrito Representativo 35. El 28 de diciembre de 2023, el PNP certificó al señor Pagán Cuadrado como aspirante al aludido cargo, tras cumplir con los requisitos de endosos requeridos por la Comisión Estatal de Elecciones.

Luego de advenir en conocimiento de diversas alegaciones contra el aspirante certificado por el PNP, el señor Pagán Cuadrado, el Comité de Evaluación de Candidatos del mencionado partido retomó la evaluación de su idoneidad y, el 9 de febrero de 2024, emitió un informe al Directorio del organismo político. En dicho informe, se hicieron constar las siguientes situaciones por las cuales el Comité de Evaluación de Candidatos recomendó que el señor Pagán Cuadrado no era idóneo para figurar como aspirante bajo el PNP:

a. Tener querellas relacionadas al manejo de su oficina como representante que involucraron alegaciones de hostigamiento sexual;

b. No haber marcado en el formulario presentado con anterioridad al Comité que había sido objeto de querella o investigación administrativa por asuntos relacionados a hostigamiento sexual;

c. Tampoco mencionó en su formulario haber sido objeto de alguna situación de orden de protección en su contra bajo la Ley 54 de 15 de agosto de 1989, según enmendada.

d. Fue objeto de multas administrativas impuestas por la Oficina del Contralor Electoral por discrepancias entre recaudos y gastos de campaña y someter la evidencia e información pertinente.

Con la aludida recomendación, el Directorio del PNP determinó que el señor Pagán Cuadrado no era idóneo y decidió descalificar al aspirante por incumplir con las normas reglamentarias de la institución, así como de la Ley Núm. 58-2020, *infra.*[2]

Así las cosas, el 29 de febrero de 2024, el PNP presentó una querella ante el Tribunal de Primera Instancia contra el señor Pagán Cuadrado. En esencia, solicitó la validación de la determinación emitida por los organismos directivos del Partido, y, en consecuencia, la descalificación del señor Pagán Cuadrado de figurar como aspirante en las elecciones primaristas del 2 de junio de 2024.

El 8 de marzo de 2024, el señor Pagán Cuadrado contestó la querella, mediante la cual admitió algunas alegaciones y negó otras. Sustancialmente, adujo que cumplió a cabalidad con los reglamentos del PNP y por eso fue debidamente cualificado y certificado. Añadió que el Reglamento del PNP adolece de brindar un debido proceso de ley en su vertiente procesal a candidatos ya cualificados, quienes tienen un interés propietario sobre dicha cualificación. Particularizó que el concepto moral discutido en la cláusula 92 del Reglamento del PNP era uno sumamente ambiguo, subjetivo y arbitrario, por lo que podría imponérsele visos de posible anulabilidad. Asimismo, argumentó que el Comité de Evaluación de Candidatos no realizó ningún informe y, que, si lo realizó, no se le notificó. Esbozó que, ni el Directorio, ni el Comité de Evaluación de Candidatos de su partido le citó para una vista administrativa para brindarle la oportunidad de ser escuchado y presentar evidencia respecto a las alegaciones en su contra dirigidas hacia una descalificación. Como defensas afirmativas alegó, entre otras cosas, falta de las siguientes partes

---

[2] Véase, *Certificación de Resultados,* Apéndice del recurso, págs. 130-134.

indispensables: (1) según la Ley Electoral, los demás componentes que comprenden a la Comisión Estatal de Elecciones y (2) los más de 250 electores que lo endosaron.

El mismo 8 de marzo de 2024, el señor Pagán Cuadrado solicitó al TPI que dictara sentencia sumaria, denegando la solicitud de descalificación de candidato instada por el PNP. En su escrito, enumeró 18 hechos sobre los cuales entendía que no existía controversia. A su vez, reconoció que, aunque la norma prevaleciente en Puerto Rico es que se les brinde deferencia a los partidos políticos en cuanto a determinar la idoneidad de un candidato que aspira a aparecer en su papeleta, en ciertas circunstancias, como las que posee su caso, dicha decisión debía realizarse en observancia al derecho a un debido proceso de ley al que ostenta todo afiliado a una colectividad política ante determinaciones de esta naturaleza.

Además, sostuvo que:

(1) la mayoría de los hechos ahí enumerados eran de conocimiento de los miembros del Comité Evaluador,

(2) otros no tienen que ver con el carácter o moral del demandado ya que se refiere a actos de terceros,

(3) otros son hechos respecto a los cuáles se ha cualificado positivamente a otros aspirantes y/o candidatos que continúan como tal al día de hoy,

(4) que éste contestó el formulario de aspiración a su mejor entender conforme a la redacción de las preguntas en el mismo con veracidad y transparencia hasta el punto que anotaciones a mano explicativas incluyó.

(5) Que ante el hecho de que la verdad, el error y la mentira son criterios subjetivos de intención y/o propósito; el Directorio del PNP no podía determinar la solicitud de descualificación de candidatura del demandado no sin antes brindarle dentro de su derecho a un debido proceso de ley, la oportunidad de ser escuchado y presentar evidencia que refute la antes señalada intención de mentir u ocultar información. Ese debido proceso de ley lo podía realizar de manera directa el Directorio o en la alternativa mediante un oficial examinador o comité y/o sub-comité nombrado por el de evaluación.

Añadió que, una vez cualificado un aspirante, este tenía un interés propietario sobre dicha cualificación. Reiteró que no ocultó información ni le mintió al PNP en la respuesta 49 del *Formulario para Aspirantes Elecciones Generales 2024* y adujo que su redacción es vaga y ambigua en exceso.

En esa dirección, el señor Pagán Cuadrado argumentó que, si se le hubiera brindado un debido proceso de ley, se evitaba una determinación caprichosa como la emitida por el Directorio del PNP. Señaló que las imputaciones en cuestión eran conocidas por el PNP cuando originalmente lo cualificó. En la alternativa, alegó que, conforme a los hechos irrefutables y evidencia anejada en su solicitud de sentencia sumaria: (1) no existe conducta de su parte que debiera ser considerada como detrimento a las cualificaciones morales, éticas y/o que menoscaben la confianza del electorado y/o (2) el PNP cualificó a otros aspirantes o candidatos con señalamientos públicos o imputaciones idénticas a las suyas.[3]

Celebrada una vista argumentativa durante la cual los abogados de las partes argumentaron oralmente sus respectivas posiciones sobre la querella de referencia, el 13 de marzo de 2024, el PNP incoó su moción en respuesta a la solicitud de sentencia sumaria.[4] Precisó que el caso se sometió a la consideración del Tribunal con prueba documental estipulada con exclusión de cualquier otra prueba. Expuso que el criterio político emitido por el Directorio del PNP tras la recomendación del Comité de Evaluación de Candidatos no podía ser sustituido por un tribunal de derecho. Añadió que, al señor Pagán Cuadrado no revelar información relevante, en específico, un asunto de orden de protección por

---

[3] Junto a su solicitud incluyó: declaraciones juradas suscritas por éste el 6 y 7 de marzo de 2024; *Formulario para Aspirantes Elecciones Generales 2024*; certificaciones de la Oficina del Contralor Electoral; certificaciones del PNP; *Declaración Jurada* suscrita por la señora Nancy Malavé Toro, esposa del señor Pagán Cuadrado y documentación sobre multas administrativas pendientes de pago de la Oficina del Co
ntralor Electoral. Apéndice del recurso, págs. 14-86.
[4] *Minuta,* Apéndice del recurso, págs. 146-148.

violencia doméstica y otro sobre una reclamación administrativa por casos de hostigamiento sexual, ello para obtener su certificación como candidato, incumplió con la reglamentación aplicable. Puntualizó que, a raíz de ello, el PNP tenía la potestad en ley de descalificarlo por omitir o proveer información falsa. Detalló que dichos hechos, sumados a un incidente de multas relacionadas con las leyes de financiamiento de campañas, llevaron al Directorio del PNP a acoger la recomendación del Comité de Evaluación de Candidatos de iniciar el proceso de descalificación del aspirante.[5]

Atendidas las posiciones de ambas partes, el 21 de marzo de 2024,[6] el Tribunal de Primera Instancia emitió la *Sentencia* bajo nuestra consideración. Mediante la misma, declaró *Ha Lugar* la querella presentada por el PNP, y, en consecuencia, ordenó la revocación de la certificación a la aspiración del señor Pagán Cuadrado como candidato a Representante por Distrito para el Distrito Representativo 35.

La prueba documental estipulada evaluada por el TPI fue la siguiente:

1. Exhibit 1- Reglamento para evaluación de aspirantes a cargos públicos por elección y aspirantes a posiciones en el proceso de reorganización.

2. Exhibit 2- Notificación del Directorio para someter a votación mediante referéndum la reevaluación de la certificación emitida por el partido a Samuel Pagán Cuadrado.

3. Exhibit 3- Certificación de resultados.

4. Exhibit 4- Reglamento Partido Nuevo Progresista.

5. Exhibit 5- Formulario para aspirantes elecciones generales 2024 completado por Pagán Cuadrado.

6. Exhibit 6- Certificación de cumplimiento de la Oficina del Contralor Electoral.

7. Exhibit 7- Certificado de participación emitido por la Oficina del Contralor Electoral.

---

[5] Apéndice del recurso, págs. 149-158. El 15 de marzo de 2024, el señor Pagán Cuadrado instó una *Moción con Breve Réplica a Oposición de la Parte Querellante.*
[6] Notificada en igual fecha.

8. Exhibit 8- Certificación de cumplimiento de endosos.

9. Exhibit 9- Certificación de candidatura de Samuel Pagán Cuadrado.

En su pronunciamiento, el foro *a quo* hizo las siguientes determinaciones de hecho, las cuales hacemos formar parte de nuestro dictamen:

1. El 22 de noviembre de 2023, el PNP certificó a Pagán Cuadrado como aspirante a la candidatura de Representante por Distrito para el Distrito Representativo 35.

2. Como parte del proceso de certificación, Pagán Cuadrado contestó bajo juramento y presentó el *"Formulario para Aspirantes Elecciones Generales 2024"* (en adelante, "Formulario").

3. Pagán Cuadrado marcó un "NO" como contestación a la pregunta 46 del Formulario que lee como sigue:

   [¿]Se ha visto involucrado en algún incidente que envuelva o esté relacionado con actos de violencia, como, por ejemplo, pero sin limitarse a: agresiones, riñas o peleas, motines, revueltas, ¿entre otros?

4. Pagán Cuadrado marcó un "NO" como contestación a la pregunta 49 del Formulario que lee como sigue:

   ¿Se ha presentado contra usted alguna querella o reclamación administrativa, judicial o de naturaleza informal, como, por ejemplo, pero sin limitarse a: por hostigamiento sexual, hostigamiento laboral, *"bull[y]ing"*, ¿persecución, homofobia, xenofobia? De contestar en la afirmativa, en papel aparte explique detalladamente, tipo de querella, lugar donde se originó y ante que Autoridad, fecha, partes, resultado de la investigación y si hubo procesamiento formal y el resultado.

5. El Comité Evaluador del PNP emitió una comunicación al Directorio del PNP en la que señaló, entre otras cosas, que el 17 de mayo de 2018 se radicó una querella contra Pagán Cuadrado en la Comisión de Ética de la Cámara de Representantes por alegadamente ser testigo de alegados actos de hostigamiento sexual; y que en el Formulario contestó que no había sido objeto de querella o investigación administrativa por asuntos relacionados a hostigamiento sexual.

6. En la misma comunicación, el Comité Evaluador del PNP señaló, entre otras cosas, que Pagán Cuadrado no mencionó en el Formulario alguna

situación de una orden de protección en su contra bajo la Ley 54 de 1989, según enmendada.

7. En la misma comunicación, el Comité Evaluador del PNP señaló, entre otras cosas, que Pagán Cuadrado tenía un señalamiento en la Oficina del Contralor Electoral por discrepancias entre lo recaudado y lo gastado y no someter prueba de los gastos.

8. En la misma comunicación, el Comité Evaluador del PNP indicó que con la información que se tenía en la actualidad, Pagán Cuadrado no debe ser considerado como candidato idóneo del PNP y debe ser descalificado.

9. El 15 de febrero de 2024, se emitió una "Certificación de Resultados" sobre los resultados del referéndum llevado a cabo por los miembros del Directorio para la reevaluación de la certificación emitida por el partido y sobre la idoneidad de Pagán Cuadrado. Los resultados fueron de 32 votos en contra, 1 voto a favor y 6 abstenidos.

En cuanto al argumento sobre falta de parte indispensable levantado por el señor Pagán Cuadrado en la contestación a la querella, el foro primario concluyó que, tratándose de una acción que inició y adjudicó el PNP como partido político en torno a la candidatura de un ciudadano y elector afiliado que reclamaba continuar como aspirante para una candidatura bajo el PNP, esta pugna era ajena a los demás comisionados de otros partidos políticos.

De otro lado, el TPI determinó que, en el formulario para solicitar ser certificado como aspirante a la candidatura de Representante por Distrito para el Distrito Representativo 35, el señor Pagán Cuadrado dejó de declarar y divulgar información que era pertinente para que se llevara a cabo la más completa y cierta evaluación de sus calificaciones, carácter y reputación. El Tribunal entendió que lo antes mencionado constituyó una violación al Reglamento aplicable y, conforme con el Artículo 7.5 del Código Electoral, procedía su descalificación. Asimismo, el foro *a quo* reiteró lo dispuesto por nuestra jurisprudencia con relación a que: (1) los partidos políticos tienen amplia libertad para seleccionar a

las personas que habrán de representar públicamente los principios básicos de su organización y (2) poseen autonomía en cuanto a la determinación de idoneidad de los aspirantes a un cargo público electivo bajo su insignia.

Con relación al argumento del señor Pagán Cuadrado sobre violación del debido proceso de ley, el TPI expresó, en primer orden, y citando a *McClintock v. Rivera Schatz,* 171 DPR 584, 602, 604 (2007), que el derecho a ser candidato a un cargo electivo, así como el de comparecer como asociación en la papeleta electoral, no es uno fundamental. Además, el juzgador de los hechos explicó que: "De todas maneras, el Código Electoral provee para que antes de descalificar a un aspirante, el partido tenga que presentar prueba y el aspirante pueda expresarse en cuanto a las alegaciones del partido." Así las cosas, se determinó que no procedía el argumento de una violación al debido proceso de ley del señor Pagán Cuadrado, toda vez que, tanto el Código Electoral, como el Reglamento para Evaluación de Aspirantes a Cargos Públicos por Elección y Aspirantes a Posiciones en el Proceso de Reorganización del PNP, proveen el mecanismo apropiado para descalificar a un aspirante, entiéndase, presentando una querella ante el Tribunal de Primera Instancia, como lo realizó el PNP. El TPI enfatizó que el señor Pagán Cuadrado participó en el proceso, en el cual tuvo la oportunidad de expresarse y de presentar prueba.

Inconforme con la antedicha determinación, el señor Pagán Cuadrado recurre ante este foro apelativo intermedio, y le señala al TPI la comisión de los siguientes errores:

    a. Erró el TPI al sostener el criterio del PNP de descalificar al recurrente por alegadamente ocultar información al Partido cuando el cuestionario es ambiguo en exceso.

    b. Erró el TPI al declarar *Ha Lugar* la solicitud de descalificación del Partido contra el recurrente

cuando las circunstancias en la que se fundamenta la isma han sido identificadas en otros aspirantes aun cualificados por el Comité dando paso a una aplicación discriminatoria y de aplicación desigual de dichos criterios.

c. Siendo el mentir u ocultar información asuntos subjetivos e interpretativos del lenguaje utilizado en el cuestionario de solicitud de candidaturas erró el TPI al concluir al igual que el PNP que el recurrente ocultó información que (1) ya sabían y (2) según el propio lenguaje de las preguntas una solicitud de orden de protección no implica haber estado involucrado en acto de violencia doméstica. Por lo tanto, el PNP no presentó prueba objetiva alguna que evidencie intención de mentir u ocultar información.

d. Erró el TPI al darle paso a una solicitud del PNP cimentada solamente en conjeturas yendo así en contra de su propio Reglamento.

e. Erró el TPI al concluir que con solamente emplazar a la Presidenta de la Comisión Estatal de Elecciones se obtuvo jurisdicción sobre la misma. Por lo tanto, la Sentencia es nula al no tenerse debidamente emplazada a la CEE, parte indispensable en el caso.

El 8 de abril de 2024, el PNP presentó su alegato, por lo que, con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

## II.

### A

Tanto la Constitución de Estados Unidos, como la de Puerto Rico, garantizan que a ninguna persona se le privará de su libertad o propiedad sin un debido proceso de ley. Enmiendas V y XIV de la Const. de Estados Unidos, Art. II, Sec. 7 de la Const. de Puerto Rico, LPRA, Tomo 1.

Como es sabido, el debido proceso de ley, como derecho fundamental, tiene dos (2) vertientes: la sustantiva y la procesal. *Fuentes Bonilla v. ELA et al.*, 200 DPR 364, 394 (2018). La sustantiva persigue proteger y salvaguardar los derechos fundamentales de la persona, mientras que, en la vertiente procesal, el debido proceso de ley exige a los componentes del

Estado garantizar que, al interferir con los intereses propietarios de una persona, se cumpla con un procedimiento justo y equitativo. *Román Ortiz v. OGPe*, 203 DPR 947, 953 (2020); *Rodríguez Rodríguez v. E.L.A.*, 130 DPR 562, 576 (1992). En situaciones en que el Estado atente contra el interés propietario o libertario de una persona, se deben observar las siguientes garantías mínimas: (1) notificación adecuada del proceso; (2) proceso ante un juez imparcial; (3) oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) asistencia de abogado, y (6) decisión basada en el récord. *Román Ortiz v. OGPe*, supra, citando a *Fuentes Bonilla v. ELA et al.*, supra, pág. 395 esc. 75.

En armonía con lo anterior, la libertad de asociación es un derecho expresamente reconocido por la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico. Art. II, Sec. 6, Const. ELA, LPRA, Tomo 1, ed. 1999, pág. 279. El derecho al voto, al igual que la libertad de asociación, comprende el derecho a formar y a afiliarse a agrupaciones políticas con la intención de participar en el proceso electoral. Ahora bien, aunque los antes mencionados derechos son de carácter fundamental, éstos no constituyen derechos absolutos. *P.N.P. v. De Castro Font II*, 172 DPR 883, 893-894 (2007). En ese sentido, la Asamblea Legislativa tiene la facultad y la obligación de aprobar aquella reglamentación que salvaguarde el derecho al voto y que propenda a la realización de un proceso electoral justo, ordenado, libre de fraude, honesto, íntegro y democrático. *McClintock v. Rivera Schatz*, supra, pág. 606.

Cabe destacar que "el derecho a ser candidato a un cargo electivo, así como el de comparecer como asociación en la papeleta electoral, no son derechos fundamentales". *McClintock v. Rivera Schatz*, supra, págs. 603-604, citando a *P.A.C. v. E.L.A. I*, 150 DPR

359, 372 (2000). Constituye "candidato idóneo" un elector afiliado que figure en el registro de miembros afiliados al partido, que preste juramento en el que acepte ser postulado como candidato y acatar el reglamento de su partido, y que cumpla tanto con los requisitos constitucionales aplicables al cargo como con los otros requisitos formales. *P.N.P. v. De Castro Font II,* supra, pág. 896. No obstante, en armonía con la libertad de asociación, la regulación estatutaria vigente permite exigir a los afiliados la aceptación y el cumplimiento con los reglamentos y el programa de gobierno del partido político como requisito para la afiliación. *Íd.*, pág. 897. A su vez, es reconocido que los partidos, para adelantar adecuadamente sus objetivos, están facultados para identificar quiénes deben formar parte de su membresía, así como deben tener la potestad de disciplinar y expulsar a quienes se aparten de sus criterios de asociación. *McClintock Hernández v. Rivera Schatz,* supra, pág. 602.

Para denegar una solicitud de afiliación o calificación de un aspirante a primarias que ha cumplido con los requisitos formales antes discutidos, el órgano rector del partido debe adoptar como criterio, por lo tanto, la existencia de manifestaciones o conductas del solicitante que muestren intenciones incompatibles con el programa y el reglamento de la agrupación política. *P.N.P. v. De Castro Font II,* supra, pág. 899.

En casos de esta naturaleza, la autoridad de los tribunales se activa solo en situaciones excepcionales, como cuando los reglamentos de un partido político disponen requisitos que desprecien el principio constitucional de no discriminación o de igual protección, como los que tengan por fundamento la raza o género, o que quebranten el principio democrático que permea todo el esquema estatutario relacionado al proceso electoral *P.N.P. v. De Castro Font II,* supra, pág. 899.

**B.**

El Artículo 7.2 de la Ley Núm. 58-2020, 16 LPRA sec. 4612, mejor conocida como el *Código Electoral de Puerto Rico de 2020* (Código Electoral de 2020), dispone, en lo pertinente, que los Partidos Políticos podrán reglamentar los requisitos internos para que sus afiliados puedan aspirar a un cargo en su reorganización interna o aspirar en primarias a la candidatura de un cargo público electivo. Además, especifica los requisitos legales para que el Aspirante nominado por un Partido Político o el ciudadano independiente no afiliado puedan ser calificados como Candidatos a cargos públicos electivos.

En particular, el inciso (5)(g) del Art. 7.2 del Código Electoral de 2020 explica que:

> (g) Toda persona que desee aspirar a una candidatura para un cargo público electivo por un Partido Político deberá, además, cumplir con los requisitos que establezca su Partido Político. Estos requisitos deberán ser aplicados y exigidos uniformemente a todas las personas que presenten su intención de aspirar a una candidatura por su Partido Político y no podrán ser alterados retroactivamente luego de abrirse el período para la presentación de intenciones de candidaturas, ni podrá contravenir lo dispuesto en esta Ley.

A su vez, el Art. 7.5 del Código Electoral de 2020, 16 LPRA sec. 4615, versa sobre la descalificación de aspirantes y candidatos. Este expone que:

> Cualquier Aspirante o Candidato nominado podrá ser descalificado como tal, por el Tribunal de Primera Instancia, cuando medie querella porque no cumple con los requisitos impuestos por la Constitución o la ley, o cuando se demostrare que ha violado cualesquiera de las disposiciones de esta Ley o de sus reglamentos.
> El Aspirante o Candidato impugnado deberá contestar bajo juramento dicha querella, dentro de los diez (10) días siguientes de haber sido notificada.
> Si el Tribunal de Primera Instancia, designado de conformidad con el Capítulo XIII de esta Ley, encontrare que de las alegaciones surge una controversia real, deberá citar a vista a ser realizada dentro de los diez (10) días de haber el querellado presentado su contestación. Dicho término podrá ser

reducido por el Tribunal de Primera Instancia, según lo requieran las circunstancias del caso.

Cónsono con lo anterior, el Art. 7.6 del Código Electoral de 2020, 16 LPRA sec. 4616, concede a un partido político la potestad de rechazar la intención de aspiración primarista de una persona o su candidatura a cargo público por las siguientes razones:

(a) Que la persona no ha cumplido con los requisitos establecidos en esta Ley y/o los reglamentos de primarias aprobados por la Comisión o por el Partido Político concernido.

(b) Que la persona ha violado cualquiera de las disposiciones de esta Ley, de la Ley 222- 2011, según enmendada, conocida como "Ley para la Fiscalización del Financiamiento de Campañas Políticas en Puerto Rico", o de algún reglamento promulgado conforme a estas leyes o del Partido Político concernido, con especificación de la sección incumplida.

(c) Que la persona no cumple con alguna disposición constitucional.

No obstante, las mencionadas razones, ningún Partido Político podrá incorporar una disposición ex post facto a sus reglamentos para considerarla como la causal de este tipo de descalificación.

### c.

En virtud de lo anterior, el PNP promulgó sus normas internas mediante el *Reglamento del Partido Nuevo Progresista* (Reglamento del PNP), aprobado el 20 de marzo de 2022 y el *Reglamento para Evaluación de Aspirantes a Cargos Públicos por Elección y Aspirantes a Posiciones en el Proceso de Reorganización* (Reglamento para Evaluación de Aspirantes del PNP), aprobado el 14 de septiembre de 2023.

En lo concerniente al asunto que hoy atendemos, el Art. 69 del Reglamento del PNP dispone que: el presidente del Partido nombrará un *Comité de Evaluación de Candidatos* para justipreciar los méritos y requisitos de los aspirantes a cargos públicos por elección, a los/as aspirantes a Presidentes/as, Vicepresidentes/as Municipales o Precíntales y a los/as Presidentes/as y

Vicepresidentes/as de los Organismos Estatales que vayan a elección. El aludido Comité tendrá la facultad para evaluar y pasar juicio sobre la idoneidad de cualquier aspirante o candidato en términos de su conducta, historial y circunstancias, de tal modo que se asegure que ninguna aspiración o candidatura resulte lesiva a los mejores intereses del Partido y de Puerto Rico. De igual forma, el Directorio podría referir ante su consideración cualquier querella, queja o asunto que se presente contra un miembro del Partido. Las recomendaciones de las evaluaciones realizadas por este Comité serán sometidas al Directorio, quien siempre tomará la determinación final.

De otro lado, la Sección 4.3 del *Reglamento para Evaluación de Aspirantes del PNP* expone que el Directorio del Partido podrá, en cualquier momento antes de una elección, no cualificar, a un candidato de advenir en conocimiento que el aspirante ocultó información que debió haber incluido en el formulario de aspirar o que dio información falsa o que tuvo conocimiento o información detrimental o perniciosa sobre el carácter o las costumbres del aspirante.

**III.**

Por estar estrechamente relacionados, discutiremos los primeros cuatro (4) señalamientos de error de manera conjunta.

En síntesis, el señor Pagán Cuadrado argumenta que la determinación del TPI dio paso a una decisión del organismo rector del PNP y su Directorio, arbitraria y carente de fundamento. Por tanto, entiende que la misma no merece deferencia por parte de los tribunales. Específicamente, alega que el Reglamento del PNP no contiene disposición alguna que provea un procedimiento interno para descalificar candidatos, previo a acudir a los tribunales a solicitar un remedio a base de los Arts. 7.5 y 7.6 del Código Electoral de 2020. Precisa que el PNP no sustentó con prueba

robusta la conclusión de que este les mintió u ocultó información. Sostiene que la decisión de descalificarlo es arbitraria y debe mirarse con suspicacia.

Asimismo, el señor Pagán Cuadrado aduce que el PNP no lo entrevistó, ni lo citó a explicar sus respuestas en el formulario concernido sobre lo relacionado a una querella de hostigamiento sexual y las demás alegaciones, por lo que su expediente y querella estuvieron huérfanos de evidencia que probara la intención de mentir. Ante ello, esboza que la decisión del PNP de descalificarlo fue caprichosa, meramente especulativa y/o producto de conjeturas. Destaca que el organismo de su partido lo discriminó y utilizó como "chivo expiatorio". Más aún, expone que el PNP falló en refutar sus alegaciones de que las respuestas en el cuestionario se debieron a un error, por ser, a su entender, las preguntas en cuestión ambiguas en exceso. Por su parte, el PNP está de acuerdo con la Sentencia del TPI y resalta que no actuó caprichosa o discriminatoriamente al tomar la decisión de descalificar al señor Pagán Cuadrado. Arguye que el criterio del Partido no debe ser sustituido por el del Tribunal.

Según expuesto, la vertiente procesal del debido proceso de ley exige a los componentes del Estado garantizar que, al interferir con los intereses propietarios de una persona, se cumpla con un procedimiento justo y equitativo. *Román Ortiz v. OGPe*, supra. En ese sentido, el señor Pagán Cuadrado entiende que posee un interés propietario sobre su cualificación de candidato al cargo concernido. No obstante, el Tribunal Supremo de Puerto Rico ha establecido que el derecho a ser candidato a un cargo electivo, así como el de comparecer como asociación en la papeleta electoral, no son derechos fundamentales. *McClintock v. Rivera Schatz,* supra, págs. 603-604. El Código Electoral de 2020 confiere al elector un derecho estatutario a que se le *considere* por el organismo directivo

para ser nominado como aspirante en primaria a cualquier cargo público electivo, siempre que sea un aspirante calificado porque cumple con los requisitos de esta Ley, sus reglamentos y los reglamentos del partido, no a que se le *nomine* como aspirante. Art. 7.10 del Código Electoral de 2020, 16 LPRA sec. 4620; P.*N.P. v. De Castro Font II*, supra, pág. 896.

Analizado el expediente del caso de autos, es claro que, a finales del 2023, el PNP certificó la candidatura del señor Pagán Cuadrado. Sin embargo, tras advenir en conocimiento de ciertos acontecimientos e incongruencias con las respuestas vertidas por el candidato en el formulario atañido, el Comité de Evaluación de Candidatos del PNP retomó la evaluación de su expediente y, recomendó al Directorio que procedía la descalificación del señor Pagán Cuadrado como aspirante a Representante por el Distrito 35 bajo la insignia del PNP.

En el presente caso, el Directorio del PNP tomó la decisión de iniciar los procesos de descalificación del señor Pagán Cuadrado como aspirante para la mencionada candidatura. Los fundamentos para tal proceder fueron los siguientes:

> [...]
>
> b. Para mediado[s] del mes de mayo en o alrededor del 17 de mayo de 2018 el empleado, Luis Hiram Delgado Rivera, subcontratado por International Legislative and Consulting Group del Sr. Isoel Sánchez, radicó una querella contra el Representante Pagán en la Comisión de Ética de la Cámara de Representantes por alegadamente ser testigo de alegados actos de hostigamiento sexual por parte de la esposa del representante Samuel Pagán en la Oficina del Legislador.
>
> c. Que en su formulario para su aspiración en la pregunta 49 le informó al Comité que no había sido objeto de querella o investigación administrativa por asuntos relacionados a hostigamiento sexual.
>
> d. Que tampoco mencionó en su formulario alguna situación de una orden de protección en su contra bajo la Ley 54 de 15 de agosto de 1989, según enmendada.

e. También tenía señalamiento de su campaña en la Oficina del Contralor Electoral por discrepancia entre lo recaudado y lo gastado y no someter la prueba de los gastos, entiéndase recibos de lo contratado o comprado, tampoco definía lo que era donativo en especie o donativo pecuniario. No llevaba contabilidad de lo recaudado o donado.

f. Conforme a los señalamientos y no tener la prueba que sostuviese sus alegaciones llegó a un acuerdo de plan de pago de las multas impuesta por la Oficina del Contralor Electoral.

g. Para el 28 de mayo de 2018 el aspirante renunció a su escaño en la Cámara de Representantes obtenido bajo el PNP.

h. Que el Comité Evaluador sostiene que con la información que se tiene en la actualidad no debe ser considerado como candidato idóneo del PNP y debe ser descalificado.

Asimismo, el Código Electoral establece diáfanamente que, para poder aspirar a un cargo público electivo, es necesario que el aspirante esté calificado. En ese caso, sabido es que los partidos políticos tienen la potestad de crear las reglas que regirán la operación de dicho organismo y, en esa encomienda, detallar qué se considera un candidato idóneo para correr bajo su insignia en unas elecciones. Si el aspirante no cumple con los requisitos establecidos en el Código Electoral y/o los reglamentos promulgados por el Partido Político, esté último podrá rechazar la intención de aspiración primarista de una persona o su candidatura a cargo público.

En el caso de epígrafe, el Directorio del PNP decidió que procedía descalificar al señor Pagán Cuadrado, por entender que no reunía las características para ser un candidato idóneo del partido. Ello, toda vez que actuó en contra del propósito del proceso de evaluación, al incluir bajo juramento información falsa en formulario aplicable. El Partido entendió que lo anterior fue un intento del señor Pagán Cuadrado de privarle la oportunidad de evaluar la idoneidad del aspirante. Así, colegimos que la actuación del PNP es viable bajo los términos de los reglamentos

promulgados por dicho organismo político. El PNP decidió descalificarlo por incumplir con el reglamento del partido concerniente, según lo permite el Art. 7.6 del Código Electoral de 2020, *supra.*

Además, estamos de acuerdo con la expresión del foro primario en cuanto a que el señor Pagán Cuadrado tuvo la oportunidad de comparecer y expresar sus alegaciones durante el trámite acontecido en el Tribunal. Por ello, no hallamos quebrantamiento alguno a su debido proceso de ley.

Mediante su quinto señalamiento de error, el señor Pagán Cuadrado esgrime de forma sucinta que la Comisión Estatal de Elecciones es una parte indispensable en este pleito, por lo que la sentencia apelada es nula por carecer de jurisdicción sobre dicha Comisión. Añade que la descalificación solicitada por el PNP por la vía judicial tiene como consecuencia una directriz dirigida a la Comisión Estatal de Elecciones para ordenar la implementación de descalificación. No tiene razón. Como bien concluyó el foro de instancia, este caso versa sobre una acción que inició y adjudicó el propio PNP como partido político en torno a la candidatura de un ciudadano y elector afiliado que reclama continuar como aspirante para una candidatura. Por tanto, en esta etapa de los procedimientos, esta pugna era ajena a los demás comisionados de otros partidos políticos.

En suma, los errores señalados por el señor Pagán Cuadrado no se cometieron. En ausencia de pasión, prejuicio o parcialidad, coincidimos con lo pronunciado por el Tribunal de Primera Instancia en su determinación. Procede confirmar la determinación apelada.

**IV.**

En virtud de lo anteriormente expresado, confirmamos la *Sentencia* impugnada.

**Notifíquese inmediatamente.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda.  Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones